IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**DERRICK M. WILLIAMS**                                          **PLAINTIFF**

**VS.**                              **CIVIL ACTION NO.: 4:25-cv-89-RPC-JMV**

**OFFICER BRYAN BRACEY; THE CITY OF DREW;
INVESTIGATOR EDWARD DWIGHT LUCAS, IN HIS
OFFICIAL CAPACITY; CHIEF TERRY TYLER, IN HIS
OFFICIAL CAPACITY; SUNFLOWER COUNTY,
MISSISSIPPI; AUTHOR CALDERON, PUBLIC
DEFENDER IN HIS OFFICIAL CAPACITY;
TAKIYAH H. PERKINS, IN THEIR OFFICIAL
CAPACITY; JUDGE RICHARD A. SMITH, IN THE
OFFICIAL CAPACITY; JAMES LITTLETON, IN HIS
OFFICIAL CAPACITY; WASHINGTON
COUNTY JAILERS, IN THEIR OFFICIAL CAPACITY;
WASHINGTON COUNTY REGIONAL FACILITY;
WASHINGTON COUNTY, MISSISSIPPI; THE STATE OF
MISSISSIPPI; THE COUNTY JAIL SUNFLOWER
COUNTY; AND SUNFLOWER COUNTY**                            **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Derrick M. Williams brings this action against multiple defendants pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments. The case is before the Court on Defendants City of Drew and Officer Bryan Bracey's Motion for Judgement on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, as well as separate Motions to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) filed by Circuit Court Judge Richard A. Smith and Assistant District Attorney Takiyah H. Perkins; Sunflower County Jail; and the State of Mississippi. For the reasons set forth below, the Motion for Judgement on the Pleadings [Doc. 70] is GRANTED. The separate Motions to Dismiss [Doc. 99], [Doc. 109], and [Doc. 110] are likewise GRANTED.

1

## I.     BACKGROUND

On February 10, 2020, Williams was arrested by Drew Police Department ("Drew PD") and charged with arson in violation of Mississippi Code Section 97-17-1(1).[1]  Williams was accused of setting fire to a 2018 Ford Fusion and a 2008 Chevy Impala in Drew, Mississippi the day before his arrest.  Shortly after his release on that charge, Williams was arrested again on February 25, 2020, by Officer Bryan Bracey of Drew PD and charged with aggravated assault in violation of Mississippi Code Section 97-3-7(2)(a)(ii)[2] and possession of a deadly weapon by a felon in violation of Mississippi Code Section 97-37-5(1).[3]

On January 6, 2022, a Sunflower County grand jury indicted Williams, in Cause No. 2021-0054, for aggravated assault with a firearm enhancement and possession of a firearm by a convicted felon.  He was separately indicted on April 22, 2022, in Cause No. 2022-0014, for arson.

---

[1] Section 97-17-1(1) states:

> Any person who willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, whether occupied, unoccupied or vacant, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto, or any state-supported school building in this state whether the property of himself or of another, shall be guilty of arson in the first degree, and upon conviction thereof, be sentenced to the penitentiary for not less than five (5) nor more than twenty (20) years and shall pay restitution for any damage caused.

[2] Section 97-3-7(2)(a) states:

> A person is guilty of aggravated assault if he or she (i) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; (ii) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (iii) causes any injury to a child who is in the process of boarding or exiting a school bus in the course of a violation of Section 63-3-615; and, upon conviction, he or she shall be punished by imprisonment in the county jail for not more than one (1) year or sentenced to the custody of the Department of Corrections for not more than twenty (20) years.

[3] Section 97-37-5(1) states that: "[i]t shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm . . . ."

2

On October 17, 2023, Williams entered two guilty pleas in the Sunflower County Circuit Court. In Cause No. 2021-0054, Williams pled guilty to unlawful possession of a firearm by a convicted felon. *See* [Doc. 70-2]. Pursuant to that agreement, the State dismissed the aggravated assault charge and Williams received a sentence of eight-years with five years to serve, followed by three years of post-release supervision.

In the arson matter, bearing Cause No. 2023-0038 BOI,[4] Williams pled guilty to arson in exchange for dismissal of Cause No. 2022-0014, restitution, and a sentence of two years of post-release supervision to run consecutive to the sentence imposed in Cause No. 2021-0054. *See* [Doc. 70-1]. The arson charge in Cause No. 2022-0014, was dismissed by order on October 23, 2023, at the request of the State and on October 26, 2023, the Sunflower County Circuit Court entered an Order Nolle Prosequi dismissing the aggravated assault charge.

On June 23, 2025, Williams filed suit against Officer Bracey, pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth Amendment rights. *See* [Doc. 1] In his Complaint, Williams alleged that Officer Bracey arrested him on five counts of aggravated assault and at some point, during that arrest, stole a lottery ticket from his wallet. *See* [Doc. 1-2]. Williams claimed that he had already scratched the ticket before it was taken, revealing three-dollar signs. According to Williams, Officer Bracey later used the ticket proceeds to purchase an apartment complex. Williams sought $500,000.00 in compensatory damages. On August 26, 2025, Williams filed an Amended Complaint [Doc. 37] seeking $100,000.00 in punitive damages, or in the alternative, the value of the stolen ticket.[5]

---

[4] Williams's Petition to Enter Guilty Plea [Doc. 70-1 at 8] is labeled Cause No. 2023-0038 BOI, Cause No. 2022-0014 is crossed out and relabeled with the new cause number. This Court is unaware as to the specific reason for the change in cause number.

[5] Williams does not specify the value of the ticket in either complaint.

3

Williams subsequently filed a series of additional complaints, expanding both his factual allegations and the number of named defendants. *See* [Doc. 38, 39, 54, and 107]. The additional defendants include: the City of Drew; Investigator Edward Dwight Lucas; Chief of Police Terry Tyler (collectively referred to as the "Drew Defendants"); Sunflower County; Sunflower County Jail; Sunflower County Courts; Assistant District Attorney Takiyah H. Perkins; Circuit Court Judge Richard A. Smith; James Littleton; Washington County Regional Facility; Washington County Jailers; Williams's former attorney, Author Calderon; and the State of Mississippi.

In his Complaint filed on August 26, 2025 [Doc. 38], Williams asserted Fourth, Eighth, and Fourteenth Amendment claims against the Drew Defendants, alleging that he was a victim of the City of Drew's "throw away child policy" and that, from approximately 1996 through 2022, Drew PD repeatedly jailed him, imposed fines and bail, and threatened him with future incarceration. Williams further alleges that he entered into an agreement with Chief Tyler whereby, in exchange for leaving the City of Drew, Chief Tyler would secure his release from jail. Williams contends that he accepted these terms and subsequently moved to Nebraska, where he experienced homelessness. He also alleges that Chief Tyler and Investigator Lucas entered his storage unit without authorization and stole a sports card album belonging to his children, which he valued at $800,000,000.

In a second complaint filed on the same date, [Doc. 39] Williams asserted Fourth, Fifth, Eighth, and Fourteenth Amendment claims against Sunflower County, Author Calderon, Judge Smith, ADA Perkins, and James Littleton. The pleading, however, does not identify any specific acts or omissions attributable to the individual defendants, nor does it describe any particular conduct committed by these individual defendants.

4

Williams also filed a complaint against the Washington County Regional Facility and Washington County Jailers [Doc. 54] in which he alleges that he was assaulted and kidnapped by Washington County jailers and Drew PD officers. Williams does not specify the date the alleged incident occurred or identify any of the individuals involved. *Id*.

On January 14, 2026, Williams filed an additional complaint against the State of Mississippi, the Sunflower County Jail, and Sunflower County Courts, alleging violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights, seeking both monetary compensation and exoneration of his convictions. [Doc. 107]. Attached to that complaint, is a statement in which Williams appears to direct his allegations primarily at the City of Drew and Drew PD, naming Judge Smith, ADA Perkins, and Calderon among those responsible for the alleged violations.

The City of Drew and Officer Bracey have moved for judgement on the pleadings under Rule 12(c), arguing that Williams has failed to allege a plausible claim for relief, failed to establish a constitutional violation, and that any state law claims are barred by the Mississippi Torts Claims Act ("MTCA"). *See* [Doc. 70].

Separately, Judge Smith and ADA Perkins, Sunflower County Jail, and the State of Mississippi have filed motions to dismiss pursuant to Rule 12(b)(6), contending that Williams has failed to state a claim upon which relief could be granted. The State of Mississippi additionally moves to dismiss under Rule 12(b)(1), asserting that this Court lacks subject matter jurisdiction of Williams's claims because of its entitlement to Eleventh Amendment immunity.

## II.     STANDARD OF REVIEW

Before the Court are four separate motions challenging the sufficiency of Williams's claims at the pleading stage. The State of Mississippi moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, challenging this Court's subject matter

jurisdiction and the legal sufficiency of the claims asserted against it. The City of Drew and Officer Bracey move to dismiss under Rule 12(b)(6) and alternatively seek judgment on the pleadings under Rule 12(c). The Sunflower County Jail and Judge Smith along with ADA Perkins likewise move to dismiss under Rule 12(b)(6). Because each motion implicates distinct but related pleading standards, the Court addresses the applicable legal frameworks in turn.

### A. Rule 12(b)(1)

Where, as here, a defendant raises a Rule 12(b)(1) jurisdictional challenge alongside a Rule 12(b)(6) challenge to the merits, the Court must resolve the jurisdictional question first. *See Smith v. Toyota Motor Corporation*, No. 1:19-CV-6-SA-DAS, 2019 WL 6255488, at *1 (N.D. Miss. Nov. 22, 2019). In assessing whether subject matter jurisdiction exists, the Court's determination may rest upon: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Funchess v. Miss. Dep't of Corr.*, No. 3:20-CV-502-HTW-LGI, 2025 WL 746527, *4 (S.D. Miss. Mar. 7, 2025). Where Eleventh Amendment immunity applies, it operates as a jurisdictional bar, stripping the Court of subject matter jurisdiction over claims against the immune defendants. *Id*. (holding that "[i]f defendants are entitled to Eleventh Amendment immunity, the Court lacks subject matter jurisdiction over a plaintiff's claims against those defendants.").

### B. Rules 12(b)(6) and 12(c)

The standard governing dismissal for failure to state a claim under Rule 12(b)(6) is the same as that for dismissal under Rule 12(c). Under Rule 12(c), the Court's review is "generally limited to the contents of the pleadings, including attachments thereto." *Miller v. Thigpen*, No. 2:24-CV-97-HSO-BWR, 2025 WL 1461831, at *2 (S.D. Miss. May 21, 2025). The motion is

6

"designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Id*.

To survive dismissal under either rule, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 578, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). The court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 290 (5th Cir. 2016); *see also Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Although detailed factual allegations are not required, the allegations must be sufficient enough "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions" are likewise insufficient to prevent dismissal. *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quoting *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009)).

### C. Qualified Immunity

Where individual defendants assert qualified immunity at the pleading stage, the plaintiff bears the burden of pleading "facts which, if proved, would defeat the claim of immunity." *Murry v. City of Indianola*, No. 4:23-CV-97-DMB-DAS, 2025 WL 978217, *6 (N.D. Miss. March 31, 2025) (citations omitted) (quoting *Guerra v. Castillo*, 82 F. 4th 278, 285 (5th Cir. 2003)); *see also Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). To meet that burden, the plaintiff must

allege specific conduct establishing both that a statutory or constitutional right violation occurred and that the right at issue was clearly established at the time of the alleged conduct. *Id*. at \*9.

Dismissal is also warranted, when a complaint fails to allege specific facts connecting individual defendants to actionable conduct. ***Magee v. Bank of New York Mellon Corp.***, No. 2:23-CV-64-KS-MTP, 2023 WL 4568780 at \*2 (S.D. Miss. July 17, 2023) (quoting ***Twombly***, 550 U.S. at 555, 127 S.Ct. 1955) ("A complaint must plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.").

## III.   ANALYSIS

### A.  Eleventh Amendment Immunity

The Eleventh Amendment precludes suits brought "by private citizens against states in federal courts unless the state has waived its immunity, or Congress has abrogated the state's sovereign immunity." ***Adams v. Mississippi,*** No. 1:18CV216-JMV, 2018 WL 6515135 (N.D. Miss. Dec. 11, 2018).  This sovereign immunity extends beyond the state itself to any state agency or department deemed to be an "arm of the state," and to suits against state agencies or officials where the relief sought would ultimately be satisfied from state funds. *See **Funchess***, 2025 WL 746527, \*5; ***Brown v. Lee***, No. 3:19-CV-33-HTW-LRA, 2021 WL 1557410, \*4 (S.D. Miss. Mar. 29, 2021).

The State of Mississippi is therefore immune from suit, as it has not waived its immunity, nor has Congress abrogated its sovereign immunity.  "Section 1983 did not abrogate states' Eleventh Amendment immunity with respect to those claims." ***Williams v. Zachary***, No. 118CV00128GHDDAS, 2019 WL 419289, \*2 (N.D. Miss. Feb. 1, 2019).  Mississippi's state courts and the judges who preside over them are considered "arms of the state" and are also entitled to Eleventh Amendment protection. ***Brown***, 2021 WL 1557410 at \*4 (Mississippi's circuit courts

are "arms of the state," entitling them and the circuit court judges to Eleventh Amendment protection.). Accordingly, Judge Smith, sued solely in his official capacity, is cloaked with the sovereign immunity that protects the state itself. Like Judge Smith, ADA Perkins similarly enjoys the state's sovereign immunity protection. *See High v. Pearl River Cnty. Dist. Att'y*, No. 1:12-CV-201-LG-JMR, 2012 WL 5450065, *2 (S.D. Miss. Nov. 7, 2012) ("A district attorney's office in Mississippi is considered an arm of the State of Mississippi.").

Beyond the threshold immunity bar, Williams's complaint fails to state a claim for relief against Judge Smith or ADA Perkins under the pleading standards established in *Iqbal* and *Twombly*. Williams's complaint contains only broad, conclusory allegations that the State of Mississippi, Judge Smith, and ADA Perkins violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. *See* [Docs. 107 and 107-1]. These allegations, however, lack any specific factual context identifying what acts or omissions these individual defendants committed, or what conduct of theirs caused the alleged harm. Thus, the Court finds that Williams has failed to plead sufficient facts to make a plausible inference that Judge Smith or ADA Perkins committed any constitutional violation. Accordingly, even if sovereign immunity did not apply, Williams's claims would be subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim.

In addition, Williams cannot recover damages from these defendants under Section 1983. "The United States Supreme Court has succinctly held that the State, arms of the State and state officials sued in their official capacity are not persons within the meaning of 42 U.S.C. § 1983." *Funchess*, 2025 WL 746527 at *5. Accordingly, all claims against the State of Mississippi, Judge Smith, and ADA Perkins in their official capacities are dismissed with prejudice on sovereign immunity grounds.

**B. *Monell* Liability**

9

Next, the Court considers whether Williams has stated a viable Section 1983 claim against the City of Drew, Chief Tyler, Investigator Lucas, and Officer Bracey, in their official capacities.[6] In *Monell v. Dep't of Soc. Servs. of City of New York*, the United States Supreme Court held that local governing bodies, such as the City of Drew, can be sued directly under Section 1983 for monetary, declaratory, or injunctive relief when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, *690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). This district has consistently held that claims asserted against municipal officials in their official capacities are treated as claims against the municipality itself. *Roland v. Humphreys Cnty., Miss.*, No. 4:20-CV-111-DMB-DAS, 2022 WL 141855, *4 (N.D. Miss. Jan. 14, 2022) (quoting *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)). Because the City of Drew is a named defendant, Williams's official capacity claims against Chief Tyler, Investigator Lucas, and Officer Bracey are redundant of those asserted against the city and are therefore subject to dismissal. *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 373 (5th Cir. 2010); *see also Harmon v. Ocean Springs, Miss.*, No. 1:24-CV-242-HSO-RPM, 2025 WL 2085530, *3 (S.D. Miss. July 24, 2025). As such, against the individual defendants are treated as claims against the City of Drew itself. *Id*.

### C. Section 1983 Liability

Section 1983 provides a cause of action against any person who, acting under the color of state law, deprives another of rights secured by the Constitution and laws of the United States. *See*

---

[6] In his Complaint [Doc. 38], Williams indicates that all named defendants are being sued in their official capacities. However, in his complaints against Officer Bracey [Docs. 1 and 37], he does not specify whether Officer Bracey is being sued in his individual capacity, official capacity, or both. Because this Court employs a "liberal reading" of pleadings filed by *pro se* plaintiffs," Williams's claims against Officer Bracey will be analyzed in both his individual and official capacity. *See Berry v. LoanCity*, 489 F. Supp. 3d 441, 447 (M.D. La. 2020).

42 U.S.C. § 1983. To state a viable claim for municipal liability under Section 1983, a plaintiff must demonstrate the "deprivation of a federally protected right caused by action taken pursuant to an official municipal policy." *Miller*, 2025 WL 1461831 *3 (internal citations omitted). This requires a plaintiff to establish "(1) an official policy or custom, of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom." *Id*. The Fifth Circuit has recognized three avenues by which an official policy may be established.

> First, a policy statement formally announced by an official policymaker. Second, a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. And third, a single unconstitutional act by a final policymaker.

*Cambric v. City of Corpus Christi*, 170 F.4th 321, 325 (5th Cir. 2026) (internal citations omitted). Critically, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur . . ." *Harmon*, 2025 WL 2085530, at *5. Isolated acts of misconduct by individual municipal employees will almost never give rise to municipal liability in the context of a § 1983 claim. *See Passman v. Thames,* No. CIV.A. 205CV85KSJMR, 2006 WL 1195627, *8 (S.D. Miss. May 2, 2006) ("Liability can never be imposed on the basis of *respondeat* superior.). What is required is evidence of persistent, repeated violations, "evidenc[ing] a deliberate indifference to the rights of the plaintiff." *Id*. ("There must either be direct involvement of the county in the infringement or the violation must occur as a result of the county's official policy.").

Williams contends that he is a victim of the City of Drew's "throw away child policy" and that, from 1996 and through 2022, he was repeatedly jailed, required to pay fines and bail, and threatened with future incarceration. These allegations, however, do not clear the pleading

11

threshold necessary to establish municipal liability. Williams provides no factual context describing how the alleged policy was implemented, what its scope entailed, or the mechanism by which it was applied. In addition, Williams does not identify any similar incidents involving other individuals that would support an inference of a persistent, widespread custom. *See **Harmon***, 2025 WL 2085530, at \*5; *see also **Miller***, 2025 WL 1461831 \*6 ("Because the Complaint does not adequately allege a widespread practice of violating individuals' constitutional rights sufficient to establish an official policy of Jones County, Plaintiff's claim of a pattern and practice of violating individuals' constitutional rights cannot survive.") Without these factual details, a reasonable inference that a persistent, widespread municipal policy existed cannot be drawn.

Independently, Williams's claims fail on substantive constitutional grounds as well. To the extent his claims rest on the alleged theft of his personal property by Officer Bracey, Investigator Lucas, and Chief Tyler, such allegations do not state a cognizable constitutional violation because a meaningful post-deprivation remedy exists. ***Whitefoot v. Sheriff of Clay Cnty.***, No. 1:14-CV-113-SA-DAS, 2016 WL 4470769, \*3 (N.D. Miss. Aug. 22, 2016) ("Property interests, of course, are not created by the Constitution."); ***Willis v. Sparkman***, No. 4:10CV096-P-D, 2010 WL 3522993, \*1 (N.D. Miss. Sept. 1, 2010) (holding that random and unauthorized deprivations of property do not constitute a civil rights violation "as long as the state provides a meaningful post-deprivation remedy."); ***Roderick v. City of Gulfport, Miss.***, 144 F.Supp.2d 622, 630 (S.D. Miss. 2000). Because Mississippi law provides such remedies,[7] Williams's property deprivation claims therefore fail regardless of whether a municipal policy or custom is adequately alleged.

---

[7] *See e.g.*, ***Masonite Corp. v. Williamson***, 404 So. 2d 565, 567 (Miss. 1981) (conversion); ***Willis v. Sparkman***, No. 4:10CV096–P–D, 2010 WL 3522993 at \*1 (N.D. Miss. Sept. 1, 2010) (Plaintiff's remedy is not found in a Section 1983 action, but in a tort claim under state law.); ***Walker v. Grubbs***, No. 4:07CV95-JCS, 2009 WL 724031, \*1 (S.D. Miss. Feb. 12, 2009) ("Mississippi common law provides adequate remedies for the taking of personal property.").

The allegations concerning improper detention, bail, and fines fare no better, because they are entirely conclusory. "A false arrest occurs, and an individual's Fourth Amendment rights are violated, when an officer conducts an arrest without probable cause." ***Wood v. Bexar Cnty., Texas***, 147 F.4th 534, 546 (5th Cir. 2025). Williams does not allege that any of his arrests or detentions lacked probable cause. In addition, the record reflects that Williams pled guilty to the charges arising from his 2020 arrests and was sentenced to eight years with five to serve.[8] The mere fact of detention, or the imposition of bail or fines, does not, without more, establish a violation of the Constitution. Williams's reference to the purported "throw away child policy," without supporting factual allegations tying that purported policy to specific, identifiable constitutional harm, is likewise insufficient. *See **Passman***, 2006 WL 1195627 at *8. Accordingly, the claims against the City of Drew, Chief Tyler, Investigator Lucas, and Officer Bracey, in their official capacities, are dismissed.

### D. State Law Claims

To the extent Williams asserts state law claims against the Drew Defendants, in their official capacities, those claims are barred by the Mississippi Tort Claims Act ("MTCA"). The MTCA requires that "before a claimant files suit against a governmental entity, a notice of claim must first be filed with that entity." *See* Miss. Code Ann. § 11-46-11(1); ***Whitefoot***, 2016 WL 4470769, at *5. Substantial compliance with the MTCA's pre-suit notice provisions is a well-settled prerequisite to suit under Mississippi law. ***Id***.

The record reflects that the Drew Defendants raised Williams's failure to provide MTCA pre-suit notice as a defense in their answer [Doc. 65]. Williams did not respond to any of the

---

[8] *See **Royal Oil Co. v. Wells***, 500 So. 2d 439, 443 (Miss. 1986) ("When a conviction is obtained in a lower court prosecution, whether reversed or not, a prima facie case is made that probable cause is present, in the absence of fraud, perjury or other corrupt practices.").

defendants' motions to dismiss or the motion for a judgment on the pleadings, and he has produced no evidence of his compliance with the MTCA's notice requirements. Therefore, any state law claims asserted against the Drew Defendants, in their official capacities, are also dismissed.

### E. Individual-Capacity Claim Against Officer Bracey

Lastly, the Court turns to Williams's Section 1983 claims against Officer Bracey in his individual capacity. In his complaints, Williams alleges that Officer Bracey stole a lottery ticket from his wallet while he was incarcerated and later used the ticket proceeds to purchase an apartment complex. Officer Bracey argues that he is entitled to qualified immunity regarding the individual capacity claims. A two-pronged test determines whether defendants are entitled to qualified immunity:

> First, the Court must determine whether the plaintiff has alleged a violation of constitutional or statutory rights. If such violation is alleged, the Court next considers whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law.

*Hunter v. Town of Edwards*, 871 F. Supp. 2d 558, 562 (S.D. Miss. 2012). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Gaines v. Jefferson Cnty. Sch. Dist.*, 705 F. Supp. 3d 664, 671 (S.D. Miss. 2023).

The allegations against Officer Bracey, in his individual capacity, even accepted as true, do not state a cognizable constitutional violation. Under the *Parratt/Hudson*[9] doctrine,

> no constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional or state law *fails to afford an adequate post-deprivation remedy for their conduct.*

---

[9] See *Parratt v. Taylor*, 451 U.S. 527, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981) and *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984).

*Holder v. White*, No. 4:23CV133-JMV, 2024 WL 4369217, *3 (N.D. Miss. Oct. 1, 2024) (quoting

*Martin v. Dallas Cnty, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987) (emphasis added)).  Williams does

not allege that Officer Bracey acted pursuant to any established or unconstitutional state procedure.

Instead, his allegations describe, at most, a random and unauthorized act by a state official,

precisely the circumstance to which the ***Parratt/Hudson*** doctrine applies.  The relevant inquiry is

therefore whether adequate post-deprivation remedies exist under state law.  They do.  *See **Walker***

***v. Grubbs***, No. 4:07cv85–JCS, 2009 WL 724031, *1 (S.D. Miss. Feb. 12, 2009) (Mississippi

common law provides adequate remedies for the wrongful taking of personal property.).  Because

such remedies are available to Williams under Mississippi law, he has not alleged a cognizable

constitutional violation, and Officer Bracey is therefore entitled to qualified immunity with respect

to Williams's individual capacity claims.

### F.  Sunflower County Jail

Williams's claims against the Sunflower County Jail also fail as a matter of law because

the county jail is not a legal entity capable of being sued under state or federal law.  *See **Roberts***,

2024 WL 3034107 at *2.  Accordingly, it must also be dismissed from suit.

## IV.    CONCLUSION

For the reasons set forth above, Williams has failed to state a claim upon which relief can

be granted against the State of Mississippi, Judge Smith, ADA Perkins, the City of Drew, Chief

Tyler, Investigator Lucas, and Officer Bracey, in their official capacities, or the Sunflower County

Jail, or Officer Bracey in his individual capacity.  All claims against these defendants are therefore

dismissed with prejudice.[10]

---

[10] This ruling does not affect the remaining defendants: James Littleton, Sunflower County, Washington County, Washington Co. Regional Facility, Washington Co. Jailers, or Attorney Arthur Calderon.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Motion for Judgment on the Pleadings [70] filed by the City of Drew and Officer Bracey is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that the Motions to Dismiss [99], [109], and [110] filed by Judge Richard A. Smith and Assistant District Attorney Takiyah H. Perkins, the Sunflower County Jail, and the State of Mississippi, are hereby GRANTED.

This the 12th day of May, 2026.

_____
UNITED STATES DISTRICT JUDGE